**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     Plaintiff | : | No. 1:13-cr-00215 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| PATRICE EBAI TALBOT | : | |
|     Defendant | : | |

## MEMORANDUM

On October 9, 2013, Defendant Patrice Ebai Talbot was indicted by the Grand Jury for conniving, conspiring, or taking any other action designed to prevent and hamper or with the purpose of preventing and hampering his departure from the United States, in violation of 8 U.S.C. § 1253(a)(1)(C).  (Doc. No. 1.)  Defendant entered a plea of not guilty on November 1, 2013.  (Doc. No. 10.)  Defendant filed a pre-trial motion challenging the validity of his removal order on January 15, 2014.  (Doc. No. 18.)  On March 20, 2014, the Court denied Petitioner's motion challenging his removal order.  (Doc. No. 26.)  Petitioner's trial was then set for May 12, 2014.  (Doc. No. 28.)

Following a colloquy with the Court on May 12, 2014, Defendant entered a knowing, voluntary, and intelligent waiver of his right to a trial by jury and elected to proceed with a bench trial.  Trial commenced following the colloquy.  Defendant presented two defenses at trial: (1) that he was not a "deportable alien" per 8 U.S.C. § 1227 because the travel document obtained by Immigration and Customers Enforcement ("ICE") officers for his removal was invalid (see Doc. No. 40); and alternatively, (2) Defendant was justified in refusing to deport based on the affirmative defense of justification (see Doc. No. 37).  Now, upon consideration of all the evidence, the Court concludes that the United States has established Defendant's guilt

beyond a reasonable doubt, and finds Defendant guilty of violating 8 U.S.C. § 1253(a)(1)(C).

## I.     ELEMENTS

To establish a violation of 8 U.S.C. § 1253(a)(1)(C), the United States must prove beyond a reasonable doubt that: (1) a final order of removal was outstanding against Defendant; (2) Defendant was a deportable alien as defined by 8 U.S.C. § 1227(a); and (3) Defendant connived or conspired, or took any other action, designed to prevent or hamper or with the purpose of preventing or hampering his departure.  8 U.S.C. § 1253(a)(1)(C).  The third element contains a specific intent mens rea requirement.  Id.  A specific-intent crime is "one whose definition requires a special mens rea above and beyond that which is required for the actus reus of the crime."  United States v. Starnes, 583 F.3d 196, 209 (3d Cir. 2009) (internal citations omitted).  That is, the third element requires both that Defendant acted in such a way as to prevent or hamper his departure and that he intended his actions to have that effect.

## II.    FINDINGS OF FACT

### A.     Final order of removal

The Court finds that the United States established beyond a reasonable doubt that a final order of removal was in place for Defendant when ICE attempted to deport him to Cameroon on March 7, 2013, May 6, 2013, and August 12, 2013.  Defendant initially challenged the validity of his removal order through a pre-trial motion.  (See Doc. No. 18.)  On March 20, 2014, the Court denied Defendant's motion, thereby upholding the validity of Defendant's removal order. (Doc. Nos. 25, 26.)  Defendant did not further attack the validity of the removal order at trial. Additionally, the United States introduced evidence that Immigration Judge Lisa Dornell issued a removal order for Defendant on April 20, 2004, and that the order became final upon review by

the Board of Immigration Appeals. 8 U.S.C. § 1101(a)(47)(B). (See Government Exhibit 3 at 10-11; see also Government Exhibit 6.) Accordingly, the Court finds that the United States has proven beyond a reasonable doubt that there was a final order of removal in place for Defendant when ICE attempted to remove him on March 7, 2013, May 6, 2013, and August 12, 2013.

### B.    Defendant's deportability

The Court finds the United States produced evidence sufficient to establish beyond a reasonable doubt that Defendant was a deportable alien as defined by 8 U.S.C. § 1227(a). An alien is "any person not a citizen or national of the United States." See Miller v. Albright, 523 U.S. 420, 422 (1998). An alien is deportable under 8 U.S.C. § 1227(a) when, inter alia, the alien's presence in the United States is in violation of law. 8 U.S.C. § 1227(a)(1)(B). The United States introduced evidence demonstrating that Defendant was born in Cameroon (see Government Exhibit 1), and entered the United States at or near Detroit, Michigan, on or about June 21, 2002, without proper admittance or parole (see Government Exhibit 2). Further, the United States offered evidence demonstrating that Defendant's application for asylum or withholding in the United States was denied by an immigration judge on April 20, 2004, that Defendant was ordered removed to Cameroon, and that the Board of Immigration Appeals upheld that decision on May 24, 2005. (See Government Exhibit 3 at 10-11; see also Government Exhibit 6.) Finally, the United States introduced evidence demonstrating that Defendant filed a motion for reconsideration with the Board of Immigration Appeals, which was denied on August 17, 2005. (Doc. No. 6 at 2.)

Defendant argued that he is not a deportable alien under Section 1227(a) because the travel document ICE obtained for his entry into Cameroon upon his deportation from the United

States was invalid.  (See Doc. No. 40.)  At trial, Defendant presented evidence that called into question the authority of Dr. Charles Greene, honorary consul to Cameroon, to supply ICE with valid travel documents for Defendant's deportation.  Specifically, Defendant argued that Dr. Greene, a Texas resident, does not have the authority to issue valid travel documents for persons residing outside of Texas,[1] that ICE misled Dr. Greene regarding the facts of Defendant's immigration case, and moreover, that ICE cannot rely on travel documents issued by "honorary consul," but instead must obtain travel documents directly from the Cameroonian embassy in Washington, D.C.  Thus, Defendant concluded that because his travel documents were invalid, he was not a "deportable alien" under Section 1227(a).

The Court believes that the evidence presented by Defendant raises serious questions as to the validity of the travel document such that this Court is unable to conclude beyond a reasonable doubt that the travel document is valid.  However, the Court has found no authority suggesting that ICE's failure to procure a valid travel document renders an individual "not deportable" under Section 1227(a).  The validity or invalidity of the travel document ICE obtained for Defendant's removal does not change the fact that Defendant entered the United States unlawfully, and that he never received a change in status rendering his presence in the United States lawful.  See 8 U.S.C. § 1227(a).  Further, individuals challenging the validity of a travel document for removal purposes generally have done so through a petition for habeas corpus, rather than as a defense to the charge of hindering removal.[2]  See Joseph v. United

---

[1] At all times relevant to this matter, Defendant has resided or been confined in Pennsylvania.

[2] In Zadyvdas v. Davis, the United States Supreme Court held that after six months confinement pursuant to a removal order, a pre-deportation petitioner may seek release from confinement by providing "good reason" that there is "no significant likelihood of removal in the

States, 127 F. App'x 79, 81 (3d Cir. 2005); Amin v. McDonald, No. 11-10017, 2011 WL 2921105, at *1 (D. Mass. July 13, 2011). Thus, the Court finds that the validity of the travel document issued by Dr. Charles Greene does not affect Defendant's status as a "deportable alien." Accordingly, the Court is satisfied that the United States has proven beyond a reasonable doubt that Defendant is deportable under 8 U.S.C. § 1227(a).

### C. Acting with the purpose of preventing departure

The Court finds the United States established beyond a reasonable doubt that Defendant acted with the purpose of preventing his removal from the United States, and did prevent his removal on March 7, 2013, May 6, 2013, and August 12, 2013. Immigration Enforcement Agents ("IEAs") Kirk Braun and Shane Musgraves testified that ICE first attempted to deport Defendant on March 7, 2013 by transporting him to Dulles International Airport and requesting that he board a flight to Cameroon. However, both IEAs Braun and Musgraves testified that upon arrival at Dulles, Petitioner refused to leave the vehicle, and prevented his physical removal by holding onto its interior cage. According to IEAs Braun and Musgraves' testimony, they then

---

reasonably foreseeable future." 533 U.S. 678, 701 (2001). Accordingly, a petitioner challenging travel documents through a habeas corpus petition pursuant to 28 U.S.C. § 2241 may argue that because the United States has not obtained a valid travel document for his removal, there is "no significant likelihood of removal in the reasonably foreseeable future," and thus he should be released. See Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005) (petitioner argued in a Section 2241 petition that his post-removal-order detention was excessively long and unconstitutional, in part due to ICE's failure to obtain valid travel documents for his deportation); Amin v McDonald, No. 11-10017, 2011 WL 2921105, at *1 (D. Mass. July 13, 2011) (petitioner argued in a habeas petition that his travel documents for deportation were invalid, and thus his removal could not be effected "in the reasonably foreseeable future"). But cf. Tonfack v. Holder, No. 3:13-1886, 2013 WL 5570232 (M.D. Pa. Oct. 9, 2013) (The court held that a detainee's challenge through a Section 2241 petition to the validity of the travel documents obtained by ICE functioned as a challenge to the validity of petitioner's removal order, and consequently dismissed the action per the REAL ID Act of 2005 as improperly brought in the district court, rather than appellate court).

read the warnings on form I-229 aloud to Defendant, thereby informing him that by refusing to board the flight he faced the possibility of prosecution for hindering his removal.  Defendant nonetheless refused to exit the vehicle in order to board the flight.  IEAs Braun and Musgraves testified that at that time, they ceased their attempt to remove Defendant because of the potential problems he could cause to the general public were he to board the plane.  A videotape of the March 7, 2013 deportation attempt was not available, but the Court credits the testimony of IEAs Braun and Musgraves.

ICE again attempted to remove Defendant from the United States on May 6, 2013, and videotaped the encounter.  (See Government Exhibit 17.)  The video shows Defendant seated at the York County Prison in York County, Pennsylvania.  (Id.)  On tape, Defendant refused to sign his removal paperwork, and stated that he would rather remain in jail than return to Cameroon.  (Id.)  IEAs Kelly McKenna and Michael Goglia, along with Deportation Officer Misty Ann Schram, then again read the I-229 form warnings to Defendant.  (Id.)  Defendant acknowledged that he understood that he might face prosecution for his refusal to depart, and indicated that he would "defend himself" if necessary.  (Id.)  Viewing Defendant's words as a threat, the officers ceased attempts to remove Defendant on that date.  (Id.)

Officers also attempted to remove Defendant from the United States on August 12, 2013, and the encounter was again videotaped.  (Id.)  IEAs Timothy Coughlin and Shawn Lewis, along with Deportation Officer Schram, transported Defendant to Dulles Airport in an ICE vehicle.  As shown on the tape, upon arrival to the airport Defendant repeatedly stated that he would not return to Cameroon and physically prevented ICE officers from removing him from the vehicle.  (Id.)  The officers informed him of the I-229 warnings, but Defendant again refused to exit the

vehicle. (Id.) Defendant grabbed onto the seatbelt and wedged his feet into the vehicle in order to prevent his physical removal. (Id.) Further, as the officers attempted to remove Defendant from the car, he attempted to bite them, and finally succeeded in biting Officer Schram. (Id.) Officials then ceased their attempts to remove Defendant.

In light of this evidence the Court is persuaded that the United States proved beyond a reasonable doubt that Defendant took action designed to prevent or hamper, or with the purpose of preventing or hampering, his departure from the United States.

**D.      Defendant's affirmative defense of justification**

At trial, Defendant argued that even were the Court to find that the United States established the elements of hindering removal pursuant to Section 1253(a)(1)(C) beyond a reasonable doubt, he should be found not guilty because he has satisfied the criteria for the affirmative defense of justification. A justification defense requires a defendant to prove by a preponderance of the evidence: "(1) that the defendant or someone else was under unlawful and present threat of death or serious bodily injury; (2) that the defendant did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative that would avoid both the criminal conduct and the threatened death or injury; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm." United States v. Dodd, 225 F.3d 340, 342 (3d Cir. 2000).

Although Defendant produced evidence at trial that he would not be "well received" in his native Cameroon, and testified that he suffered a brief period of imprisonment over a decade ago because of his membership in two organizations "at odds" with the controlling party at the

time, the Court finds he has failed to establish a present threat of death or serious bodily injury. At trial, Defendant testified that his political affiliation resulted in his arrest in 2001, but he was released from prison within one month. During previously held removal proceedings, Defendant testified that after his release from prison for the 2001 arrest, he remained in Cameroon for an additional eleven months without incident before fleeing to Canada. (See Doc. No. 18-1 at 42-45.) At trial, Defendant could not precisely recall the period between his release from prison and departure for Canada, but was able to confirm that he suffered no further arrests or physical violence before leaving the country. Defendant's trial testimony suggested he believes the Court should infer the existence of an unlawful and present threat of death or serious bodily injury to him if he returns to Cameroon because of his past imprisonment. However, Defendant did not offer any evidence to establish that a specific, imminent threat of death or serious bodily injury exists for him were he to return to Cameroon.

The Court finds Defendant's evidence did not demonstrate that at the time he hindered his removal on March 7, 2013, May 6, 2013, and August 12, 2013, he was "under unlawful and present threat of death or serious bodily injury." See Dodd, 225 F.3d at 342. Although Defendant may have subjectively feared the possibility of death or serious bodily injury upon his return to Cameroon on those dates, "[e]vidence of a mere 'generalized 'fear' does not satisfy the requirement of a well-founded fear of impending death or serious bodily harm." United States v. Villegas, 899 F.2d 1324, 1344 (2nd Cir. 1990) cert. denied, 498 U.S. 991 (1991). The Court finds that Defendant's evidence at trial did not establish more than a "generalized fear" of an unlawful and present threat of death or serious bodily injury. See id. Accordingly, the Court finds Defendant has failed to meet the first element of the justification defense, and therefore

Defendant has not asserted a prima facie justification defense.[3]

## III.   CONCLUSION

Upon consideration of all the evidence and witness testimony introduced at trial, the Court concludes that the United States has met its burden and proved beyond a reasonable doubt that Defendant is guilty of violating 8 U.S.C. § 1253(a)(1)(C).  Further, the Court finds Defendant has failed to establish a prima facie case for an affirmative defense based on justification.  Finally, although the Court has serious questions as to the validity of the travel documents ICE obtained from Dr. Charles Greene to effectuate Defendant's removal, it finds the validity of the travel document irrelevant to Defendant's charge of hindering removal.

---

[3] Because Defendant fails to establish the first element for the affirmative defense of justification, the Court need not conduct analysis as to the remaining three elements.